# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

Angela Lanette Todd

    Debtor(s)

**JUDGE RICHARD L. SPEER**

Case No. 06-30277

## DECISION AND ORDER

This cause is before the Court after a Further Hearing on the Debtor's Objection to the Trustee's Motion for Turnover. In her Motion for Turnover, the Trustee seeks possession of those funds maintained by the Debtor on deposit in a bank account. The material facts giving rise to this controversy are not in dispute.

On March 1, 2006, the Debtor, Angela Todd, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. At the time she filed her bankruptcy petition, the Debtor held funds, totaling approximately $3,900.00, on deposit in a bank account titled solely in her name. In the time immediately prior to the filing of her bankruptcy petition, the Debtor wrote two checks on the funds held in her checking account: one to her insurance company and one to her bankruptcy attorney. Although these two payees physically received the checks, neither attempted to negotiate the checks prior to the time the Debtor filed her Chapter 7 petition in this Court.

## DISCUSSION

The instant matter is before the Court on the Trustee's Motion for Turnover and the Debtor's objection thereto. Pursuant to 28 U.S.C. § 157(b)(2)(E), the adjudication of such a matter is deemed a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders and judgments. *In re Smith*, 310 B.R. 320, 321-22 (Bankr. N.D.Ohio 2004).

**In re Angela Lanette Todd**
**Case No. 06-30277**

Pursuant to her Motion, the Trustee seeks the turnover of those funds held by the Debtor in a checking account titled solely in her name. After making allowance for the Debtor's exemption, as well as the funds held in the bank account which were directly traceable to third parties, the Trustee calculated the amount subject to her Motion for Turnover to be $2,322.39. In making this calculation, the Trustee took the position that her right to the funds in the Debtor's checking account may be asserted without regard to any claim to the funds maintained by either the Debtor's attorney or her insurance company. According to the Trustee, her rights in such funds are superior to these two payees because, although they received checks from the Debtor on a prepetition basis, they did not negotiate the checks prior to the time the Debtor filed her bankruptcy petition.

When a debtor files for bankruptcy relief, any and all property in which the debtor maintains a legal or equitable interest in, wherever located, becomes property of an estate. 11 U.S.C. § 541(a). The bankruptcy trustee is the representative of the estate. 11 U.S.C. § 323. As the estate's representative, the trustee is conferred with the authority to exercise in estate property those same rights held by the debtor in the property at the time the petition is filed. *In re Alpha Center, Inc.*, 165 B.R. 881, 883 (Bankr. S.D.Ill.1994).

The scope of the estate is broad and all encompassing, and will easily reach to include funds maintained by a debtor on deposit in a bank account. *Ferris, Baker, Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 286 B. R. 109 (Bankr. D.Minn. 2002). Once included in the bankruptcy estate, the debtor's interest in property becomes subject to an action for turnover brought by the bankruptcy trustee. *Van Wert Co. Hosp. v. French, Trustee (In re Cummings)*, 266 B.R. 138, 142 (Bankr. N.D.Ohio 2001). However, a debtor may divest herself, and hence the estate, of an interest in property by effectuating a prepetition transfer of that interest. *In re Ballachino*, 243 B.R. 531, 535 (Bankr. M.D.Fla.1999) (the very nature of a transfer is to divest the debtor of an interest in property, not to acquire an interest). Resultantly, unless it is otherwise avoided under applicable bankruptcy law, any interest in property transferred by a debtor on a prepetition basis does not become property

Page 2

In re Angela Lanette Todd
Case No. 06-30277

of the estate, and therefore is not subject to a trustee's action for turnover. *Schroeder v. Rouse (In re Redding)*, 247 B.R. 474, 477 (8th Cir. B.A.P. 2000). *See also In re Creative Data Forms*, 41 B.R. 334, 336 (Bankr. E.D.Pa.1984) (if the debtor does not have the right to possess or use the property at the commencement of the case, a turnover action cannot be used as a tool to acquire such rights).

Drawing from these legal principles, the merits of the controversy between the Parties may be framed in this context: When funds are drawn on a debtor's checking account, at what point in time are the funds transferred to the payee, thus divesting the estate of any interest in the funds? The Trustee advocates that this point be set at a time no earlier than when the check is presented for payment. The Debtor's position, on the other hand, compels that an earlier point be set – when the check is physically transferred from the drawer to the payee.[1]

When a bankruptcy case is commenced, the Bankruptcy Code sets the point at which a transfer of a debtor's property is deemed to occur. In setting this time, the Code defines a transfer comprehensively; § 101(54) provides that a "transfer" "means each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." 11 U.S.C. § 101(54)(D). For this purpose, federal law controls what property interests are included within the bankruptcy estate, while state law is relevant when determining the nature and existence of a debtor's rights in property. *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

---

[1] A check transaction typically involves three parties: (1) the "drawer" who writes the check; (2) the "payee" to whose order the check is made out; and (3) the "drawee" or "payor bank," which maintains the drawer's checking account from which the check is to be paid. *Mandalay Resort Group v. Miller (In re Miller)*, 310 B.R. 185, 191 (Bankr. C.D.Cal. 2004).

Page 3

**In re Angela Lanette Todd**
**Case No. 06-30277**

In a transaction involving a check, this definition of "transfer" has been applied by both the United States Supreme Court and the Sixth Circuit Court of Appeals so as to establish the 'date of honor' rule. *Barnhill v. Johnson*, 503 U.S. 393, 394, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (preferential transfer of a check under § 547(b)); *In re Oakwood Markets, Inc.*, 203 F.3d 406, 409 (6th Cir. 2000) (avoidance of postpetition transfers of checks under § 549). Under this rule, a "transfer" occurs when, after the check is presented for payment, the drawee-bank honors the check by paying it. Although the *Barnhill* and the *Oakwood Markets* cases did not involve the exact issue before this Court – at issue in *Barnhill* was a § 547 preferential transfer while *Oakwood Markets* involved a § 549 postpetition transfer – the 'date of honor' rule employed in these decisions has been extended to the exact situation presented in this matter: where a prepetition check written by the debtor is not presented for payment prior to the filing of the debtor's bankruptcy petition.

Of note, just recently in *In re Danowski*, the Honorable Randolph Baxter held that the balance in a debtor's checking account, as of the commencement of the case, was included in "property of the estate," and could be subject to a motion for turnover brought by the trustee, without reduction for checks that the debtor had allegedly written, but that had not yet cleared, when the petition was filed. 320 B.R. 886, 888 (Bankr. N.D.Ohio 2005). Other cases aligning themselves along this same line include: *Maurer v. Hedback (In re Maurer)*, 140 B.R. 744, 746-47 (D.Minn.1992); *In re Taylor*, 332 B.R. 609, 611 (Bankr. W.D.Mo. 2005). The law of negotiable instruments, upon which each of these decisions at some level rely, supports this outcome.

Under the law of negotiable instruments, the payee of a check has no right to compel the drawee-bank to effectuate the drawer's order. In *Barnhill*, the Supreme Court explained:

> A person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance. Under the U.C.C., a check is simply an order to the drawee bank to pay the sum stated, signed by the maker and payable on demand. Receipt of a check does not, however, give

Page 4

> the recipient a right against the bank. The recipient may present the check, but, if the drawee bank refuses to honor it, the recipient has no recourse against the drawee.

503 U.S. at 398. Ohio law on negotiable instruments is entirely consistent with this statement, statutorily providing that a "check or other draft does not, of itself, operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." O.R.C. § 1303.45.

In all, this lack of standing on the part of the payee to pursue the drawee makes it conceptually difficult to connect a payee's receipt of a check with a bankruptcy "transfer." With the payee having no right to compel the drawee-bank to effectuate the drawer's order, the *sin quo non* for a "transfer" does not emerge: a disposition of property. 11 U.S.C. § 101(54)(D). Further illustrating this point, under the law of negotiable instruments, the drawer of a check is afforded the right to stop payment on the check up until the time the check is honored, or the drawee-bank otherwise takes action in reliance upon the drawer's order. O.R.C. § 1304.29; § 1304.32. As such, any transfer of funds out of a debtor's checking account prior to the 'date of honor' would be illusory as the debtor, retaining the right to stop payment on the account, would not have actually relinquished any right to the funds in the checking account.

Even disregarding the law of negotiable instruments, utilizing the 'date of honor' rule for check transfers provides continuity, and is thus sound from a policy standpoint. In *In re Oakwood Markets, Inc.*, the Sixth Circuit observed that utilizing the 'date of honor' rule for determining the timing of a check "transfer" is "appropriate because this rule encourages the prompt submission of checks to the bank, and provides a date certain upon which parties to the transfer can rely and upon which courts can base a ruling in the event of litigation." 203 F.3d at 409 (6th Cir. 2000). By comparison, with respect to the view that most closely conforms with the Debtor's position, the

Page 5

In re Angela Lanette Todd
Case No. 06-30277

Court in *Oakwood Markets* observed that "the date of receipt rule leaves too much room for manipulation by the parties to the transaction." *Id.*

Accordingly, given the strong persuasive weight of all these points, it is concluded that the 'date of honor' rule controls when determining the timing of "transfers" by check under 11 U.S.C. § 101(54). As such, the physical exchange of prepetition checks by the Debtor to both her insurance company and her bankruptcy attorney did not operate to deprive the estate, and hence the Trustee, of a superior interest in the funds represented by these two checks.

Notwithstanding, the Debtor argues that the Court should still overrule the Trustee's Motion under principles of equity. In putting forth this argument, the Debtor espoused that allowing the Trustee to administer those funds represented by her prepetition checks to her insurance company and her attorney would subject her to double payments. That is, she would be required to pay these creditors from postpetition assets.

However, while the Court appreciates that the Debtor originally intended to pay her insurance company and her attorney with prepetition property, and may now, in order to retain their services, have to pay them with postpetition property, this does not change the overall equation: the Debtor is under no legal obligation to do so. It is basic facet of a Chapter 7 bankruptcy case that so long as not specifically excluded, all prepetition debts are subject to discharge. 11 U.S.C. § 523; § 727(a). This includes prepetition legal fees. *Rittenhouse v. Eisen*, 404 F.3d 395, 396-97 (6th Cir. 2005) (holding that prepetition legal services are dischargeable in bankruptcy, but debts for postpetition attorney fees are not). Thus, to the extent that the Debtor's obligations to her attorney and insurance company stem from prepetition services, the Debtor, upon receiving a discharge, is under no legal obligation to pay either.

Page 6

**In re Angela Lanette Todd**
**Case No. 06-30277**

Even so, the Debtor did not provide, and the Court could not discern, any reason why her attorney and insurance company deserve to be treated differently than her other unsecured creditors. They, like many of the Debtor's other unsecured creditors, simply extended credit to the Debtor for services rendered prepetition. Here, a fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally.

It is also not the function of this Court to make decisions with reference to solely a debtor's best interest (or wants), but rather to do equal justice for both debtors *and* creditors. *In re Glenn*, 345 B.R. 831, 837 (Bankr. N.D.Ohio 2006). It is thus the established rule that in order to receive preferential treatment in a bankruptcy proceeding, there must be a clear authorization for such treatment from Congress. *In re CSC Indus., Inc.*, 232 F.3d 505, 508 (6th Cir.2000), *cert. denied* 534 U.S. 819, 122 S.Ct. 50, 151 L.Ed.2d 20 (2001). Hence, when set within this framework, far from reaching an equitable result, to allow the Debtor to fully pay her attorney and her insurance company with prepetition assets, which would otherwise be available for distribution to all of the Debtor's unsecured creditors, does a substantial injustice.

In conclusion, the Court finds that, since the checks issued by the Debtor to her attorney and her insurance company had yet to be honored at the time the Debtor voluntarily sought the relief of this Court, the funds represented by the checks remain property of the estate, subject to administration by the Trustee. Additionally, the Court, contrary to the Debtor's position, cannot find anything inherently unfair with such a result. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether they are specifically referred to in this Decision.

Page 7

In re Angela Lanette Todd
Case No. 06-30277

    Accordingly, it is

    **ORDERED** that the Objection of the Debtor, Angela Lanette Todd, to the Trustee's Motion for Turnover, be, and is hereby, OVERRULED.

    ***IT IS FURTHER ORDERED*** that the Debtor shall forthwith Turnover to the Trustee the sum of $2,322.39.

    Dated: January 31, 2007

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 8

# *CERTIFICATE OF SERVICE*

Copies were mailed this 31st day of January, 2007 to:

Angela Lanette Todd
9066 Mitchell Road
Rudolph, OH 43462

Richard A Schmidt
230 East Court St.
Bowling Green, OH 43402

Patricia A Kovacs
500 Madison Avenue, #525
Toledo, OH 43604

                                        /s/Diana Hernandez
                                  Deputy Clerk, U.S. Bankruptcy Court